IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ALLIED WORLD SURPLUS LINES INSURANCE COMPANY, <br><br> Plaintiff, <br><br> - against - <br><br> RICHARD GOETTLE, INC. <br><br> Defendant. | Civil Action No. _____ <br><br> Judge _____ |

## **COMPLAINT**

Plaintiff Allied World Surplus Lines Insurance Company ("Allied World"), by and through its attorneys, Lewis Brisbois Bisgaard & Smith, LLP and Kaufman Dolowich & Voluck, LLP, and in support of its Complaint against Defendant RICHARD GOETTLE, INC. ("Goettle"), based upon documents reviewed and upon information and belief, alleges as follows:

## **NATURE OF THIS CASE**

1. This is an insurance coverage action in which Allied World seeks a declaratory judgment that it owes no obligation under a claims-made-and-reported professional liability insurance policy issued to Goettle for a lawsuit filed against Goettle in Louisiana. The claimant in that case, Joe Global Conveyors, Inc. ("JGCI"), accused Goettle, before the "Policy Period" began, of "errors and omissions" in its geotechnical engineering work, making the matter a "Claim" made before the "Policy Period," not during it, as the Policy requires. Goettle also had pre-Policy knowledge of the matter but failed to report the circumstance to Allied World during

the application process for this Policy, which precludes coverage for the Louisiana lawsuit and any other proceedings or matters related to it.

## THE PARTIES

2. Plaintiff Allied World Surplus Lines Insurance Company is an Arkansas corporation with its principal place of business in New York, New York.

3. Defendant Richard Goettle, Inc. is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between Allied World and Goettle and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), because Goettle resides in Cincinnati, Ohio, within the judicial district of this District Court.

## FACTUAL BACKGROUND

6. Goettle is a geotechnical engineering and construction firm that, according to its website (www.goettle.com), "has the capacity to perform all work scopes under a design-build format with solutions specifically formulated for each individual project site." Allied World issued two, successive professional liability insurance policies to Goettle and its parent company, Goettle Holding Inc., the first one from June 28, 2016 to June 28, 2017 and the second "renewal" policy from June 28, 2017 to June 28, 2018.

A. **Goettle's August 30, 2017 Notice of "Potential Claim"**

7. Goettle (through its insurance broker) forwarded to Allied World a "Notice of Occurrence/Claim" form, dated August 30, 2017, describing a "NOTICE OF POTENTIAL CLAIM – Joy Global (Gen Contractor) alleges Insured's design of retaining walls for a dump truck ramp was defective, causing the walls to bow out." Attached to this Complaint as **Exhibit A** is a true and correct copy of Goettle's August 30, 2017 notification to Allied World.

8. Allied World acknowledged the notification, and in an email dated September 6, 2017 to Goettle's General Counsel, Richard Healey, who Goettle listed as its point of contact in the "Notice of Occurrence/Claim" form, Allied World requested additional information and copies of relevant project documents.

9. Allied World did not receive an immediate response to its requests for additional information and documents, so Allied World followed up with a telephone call on September 18, 2017 to Mr. Healey. The same day, Allied World also resent its previous requests for information and documents to Mr. Healey.

B. **The Louisiana Action**

10. On September 18, 2017, Goettle forwarded to Allied World a copy of a lawsuit filed against Goettle in federal court in Louisiana on or about September 7, 2017 by JGCI, styled *Joy Global Conveyors, Inc. v. Richard Goettle, Inc.*, Case No. 5:17-cv-01121 (the "Louisiana Action").

11. Attached to this Complaint as **Exhibit B** is a true and correct copy of the complaint filed in the Louisiana Action.

3

12. According to JGCI's complaint, JGCI entered into a December 2, 2016 purchase order agreement with Goettle, under which Goettle agreed, for the price of $1.985 million "to both design and construct a retaining wall system, including soldier piles, wood lagging with geo-composite drainage strips on the interior of the lagging, and pipe or beam tie-struts to interior whalers to tie the walls together, for use in connection with a truck dump system at the Dolet Hills lignite mine near Mansfield, Louisiana." (Ex. B at ¶ 5). JGCI alleges Goettle performed services to design the truck dump – referenced in other technical documents produced to Allied World as "TD6" – and Goettle "provided the labor, materials and equipment to construct the truck dump retaining wall." (*Id*. at ¶¶ 16-17).

13. JGCI alleges that a structural failure of the retaining wall occurred during construction of the truck dump on or about April 20, 2017, which caused a work stoppage. (Ex. B at ¶ 18). JGCI contends that it discovered the welds joining the pipe struts to the soldier piles had failed. (*Id*.).

14. JGCI and its customer, Dolet Hills Lignite Company, LLC, allegedly retained engineers to evaluate Goettle's work in designing and constructing the truck dump retaining wall. (Ex. B at ¶¶ 19-20). JCGI asserts those engineers concluded that Goettle defectively designed and constructed the truck dump retaining wall. (*Id*. at ¶ 21).

15. The complaint in the Louisiana Action alleges that JGCI gave Goettle notice of problems with the truck dump at the Dolet Hills Mine and an opportunity to cure the alleged defects in the design and construction of the retaining wall, but that Goettle failed to timely cure them. (Ex. B at ¶ 36). JGCI's complaint purports to allege causes of action for negligent design, negligent construction, breach of contract and breach of warranty. The Complaint seeks various

damages, including "the return of all monies paid to Goettle," costs and attorney's fees. (*Id*. at ¶¶ 40-57).

16. After receiving a copy of the complaint in the Louisiana Action for the first time on September 18, 2017, Allied World continued its investigation and requested additional documents and information from Goettle.

17. Goettle provided some information and documents to Allied World in response to its questions and requests. For example, on September 21, 2017, Goettle forwarded Allied World a June 1, 2017 email between project personnel at JGCI and Goettle, which attached a May 27, 2017 report by Structural Engineering, Inc., a geotechnical engineering firm JGCI hired to review Goettle's work.

   **C.**  **The May 2017 Allegations of "Errors and Omissions" Against Goettle**

18. On June 1, 2017, Larry Atkinson from JGCI emailed Humphrey Barlow, P.E., a Goettle Project Manager, under the subject "TD6 Design Review." Mr. Atkinson's email stated, "As discussed in our Root Cause Analysis, we have hired an engineering firm to review Goettle's original wall design." Mr. Atkinson also wrote, "The initial geotechnical review is attached and notes concerns that we would like for you to review and address."

19. Mr. Atkinson attached to his June 1st email the "initial geotechnical review," in the form of a May 27, 2017 email report from Justin Thomey of Structural Engineering, Inc. Mr. Thomey's May 27, 2017 report advised that he reviewed plans, testing results and geotechnical calculations and stated, "Overall, there are some errors and omissions that have me concerned. Mainly, lack of certain calculations and lack of control on the work in the plans."

20. Mr. Thomey's May 27, 2017 report then discussed at least 10 "basic summary points" regarding his review and "some recommendations" for remediation. More specifically, Mr. Thomey noted as follows:

> 10) Given the CWI inspector notes the welds may be incorrectly sized and there is a possibility if they are undersized, full fusion of the weld was not achieved. I suspect this could be a structural failure due to improper welds. However with the errors and omissions in the calculations and plans, this very well could have been caused by an incorrect geotechnical design. If at rest is more appropriate given the strut connections, the spacing on the soldier piles would be too far apart and tension loads induced on the struts would be far exceeding the allowable stresses.
>
> All in all, the geotechnical EOR needs to re-evaluate their work immediately. I see enough issues with the calculations that I am concerned when these walls go into service under the massive LL surchage [sic] from the coal hauling equipment.

21. Minutes after receiving the report by email on June 1, 2017, Mr. Barlow forwarded Mr. Atkinson's email, with its original attachment, the May 27, 2017 report from Mr. Thomey, to Doug Keller (President & CEO of Goettle), Aaron Klingshirn (an Engineer at Goettle), Eric Risberg (a Vice President at Goettle) and Brian Heck (also a Vice President at Goettle).

22. Attached to this Complaint as **Exhibit C** is a true and correct copy of the June 1, 2017 email chain forwarded by Mr. Barlow to the executives at Goettle, which included as an attachment the May 27, 2017 report from Mr. Thomey.

    **D.**    <u>**The 2016-2017 Policy Issued to Goettle**</u>

23. Allied World issued to Goettle Holding Company Inc. a Constructors Professional Liability and Protective Policy No. 0310-2122, issued for the Policy Period from June 28, 2016

to June 28, 2017 (the "2016-2017 Policy"). Attached to this Complaint as **Exhibit D** is a true and correct copy of the 2016-2017 Policy.

24. Per Endorsement No. 2 to the 2016-2017 Policy, Goettle is deemed an additional "Named Insured" under the 2016-2017 Policy.

25. As amended by Endorsement No. 7, the 2016-2017 Policy's Section I. INSURING AGREEMENTS, Coverage Part A – Constructors Professional Liability Coverage provides, in relevant part:

> A. The **Company** will pay those sums that the **Insured** shall become legally obligated to pay as **Damages** and **Defense Expenses** because of:
>
>   1. A **Wrongful Act** in the rendering or failure to render **Professional Services** to others by the **Insured** or any entity for whom the **Insured** is legally liable and to which this insurance applies; and/or
>
> \*\*\*
>
> B. For this Policy to apply, all of the following conditions must be met:
>
> \*\*\*
>
>   4. The **Insured** must report the **Claim** to the Company, in writing, during the **Policy Period** or within sixty (60) days after the end of the **Policy Period**.

26. Section VIII. CONDITIONS of the 2016-2017 Policy provides, in relevant part:

> As a condition precedent to the right of coverage under this Policy, the **Insured** must do all of the following:
>
> A. **INSURED'S** DUTIES WHEN THERE IS A **CLAIM**
>
>   1. If a **Claim** is made against an **Insured**, the **Insured** shall give written notice to the **Company**, as soon as practicable,

7

      but in no event later than sixty (60) days after the expiration date or earlier termination date of the Policy. …

27. The 2016-2017 Policy contains various other terms, conditions, exclusions and limitations.

### E. Goettle's Application for the 2017-2018 Policy

28. Goettle submitted to Allied World an "Architects & Engineers & Constructors Professional Liability Insurance Application," (the "Application") signed by Jeff Ginter as CFO and dated March 29, 2017. Attached to this Complaint as **Exhibit E** is a true and correct copy of Goettle's signed Application.

29. The Application, under the "Claims and Loss Information" section, asked the following Question:

> **21. After inquiry, do any partners, principals, directors, officers, or employees of the firm for which coverage is sought, have knowledge of any act, error or omission, unresolved job dispute (including fee disputes), accident or any other circumstance that is or could be the basis for a claim under this proposed insurance policy?**
>
> If yes, please provide details on a separate sheet including project name, and potential claimant, dates, and damages.
>
> **IT IS UNDERSTOOD AND AGREED THAT IF SUCH KNOWLEDGE OR INFORMATION EXISTS, ANY CLAIM ARISING THEREFROM IS EXCLUDED FROM THIS INSURANCE.**

30. In response to Question 21, Goettle checked the box marked "No."

31. Section 26 of the Application (Notices and Representations) further provided:

> The undersigned authorized representative agrees that if the information supplied on this Application changes between the date of this Application

and the effective date of the insurance, he/she will, in order for the information to be accurate on the effective date of the insurance, immediately notify the Insurer of such changes, and the Insurer may withdraw or modify any outstanding quotations or agreement to bind insurance.

32. Allied World relied on Goettle's representations in the Application, including the representation that no "partners, principals, directors, officers, or employees" of Goettle had "knowledge of any act, error or omission, unresolved job dispute (including fee disputes), accident or any other circumstance that is or could be the basis for a claim," as well as the representation that, if the information supplied on the Application changed before the effective date of the insurance, Goettle would notify Allied World.

33. Before the June 28, 2017 effective date of the 2017-2018 Policy, Goettle did not notify Allied World of any of the facts or circumstances it knew about problems with the truck dump at the Dolet Hills Mine, including its knowledge of the fact that JGCI, through the May 27, 2017 "initial geotechnical review," accused Goettle of "errors and omissions" on that project.

    **F.**    **The 2017-2018 Policy Issued to Goettle**

34. Allied World issued to Goettle Holding Inc. a Constructors Professional Liability and Protective Policy No. 0310-2122 for the Policy Period from June 28, 2017 to June 28, 2018 (the "2017-2018 Policy"). Attached to this Complaint as **Exhibit F** is a true and correct copy of the 2017-2018 Policy.

35. Per Endorsement No. 2 to the 2017-2018 Policy, Goettle is deemed an additional "Named Insured" under the 2017-2018 Policy.

36. Allied World issued the 2017-2018 Policy expressly in reliance on the representations made by Goettle in the Application.

37. Section VIII. CONDITIONS, Subsection E of the 2017-2018 Policy states:

> E. DECLARATIONS AND REPRESENTATIONS
>
> By acceptance of this Policy, all **Insureds** agree that the statements and information contained in the Application submitted to the **Company** are:
>
> 1. true and correct;
>
> 2. such statements and information are deemed material to the **Company's** underwriting of this Policy; and
>
> 3. that this Policy has been issued by the **Company** in reliance upon the truth and correctness of such statements and information.

38. As amended by Endorsement No. 7, the 2017-2018 Policy's Section I. INSURING AGREEMENTS, Coverage Part A – Constructors Professional Liability Coverage provides, in relevant part:

> A. The **Company** will pay those sums that the **Insured** shall become legally obligated to pay as **Damages** and **Defense Expenses** because of:
>
> 1. A **Wrongful Act** in the rendering or failure to render **Professional Services** to others by the **Insured** or any entity for whom the **Insured** is legally liable and to which this insurance applies; and/or
>
> \*\*\*
>
> B. For this Policy to apply, all of the following conditions must be met:
>
> 1. The **Wrongful Act** or **Covered Operations** must first take place on or after the Retroactive Date shown in Item 6. of the Declarations and prior to the end of the **Policy Period**;
>
> 2. Prior to the Effective Date of this Policy, no officer, director, principal, partner insurance manager, risk manager or in-house counsel of any **Insured** had knowledge of any actual or alleged **Wrongful Act**, **Pollution Condition** or circumstance that reasonably could give rise to a **Claim**

        under this Policy. If such officer, director, principal, partner, insurance manager, risk manager or in-house counsel of any **Insured** knew, prior to the effective date of this Policy, of any **Wrongful Act** or **Pollution Condition** or circumstance that reasonably could give rise to a **Claim** under this Policy, then any continuation, change or resumption of such **Wrongful Act**, **Pollution Condition** or circumstance during or after this **Policy Period** will be deemed to have been known prior to this **Policy Period**;

    3.    **Any Claim** must first be made against the **Insured** during the **Policy Period**; and

    4.    The **Insured** must report the **Claim** to the Company, in writing, during the **Policy Period** or within sixty (60) days after the end of the **Policy Period**.

39. At Section IV. DEFINITIONS, Subsection B, as amended by Endorsement No. 7, the 2017-2018 Policy defines a "Claim" as:

    B.    **Claim** means any demand or notice received by an **Insured** alleging a **Wrongful Act** or **Pollution Condition**. A **Claim** does not include a **Disciplinary Proceeding**.

40. At Section IV. DEFINITIONS, Subsection T, the 2017-2018 Policy defines "Wrongful Act" as:

    T.    **Wrongful Act** means a negligent act, error or omission, in the rendering of or failure to render **Professional Services** by an **Insured**.

41. The 2017-2018 Policy contains various other terms, conditions, exclusions and limitations.

### G.   Allied World's Coverage Determination

42. Allied World promptly investigated Goettle's August 30, 2017 notice of a "Potential Claim," including by emails to and telephone calls with the General Counsel for Goettle, Mr. Healey.

43. Goettle provided some information and documents to Allied World in response to its questions and requests, including by emails from September 18 to 26, 2017. Allied World promptly investigated the information and documents Goettle provided in mid- to late-September, 2017.

44. On October 6, 2017, Allied World issued its coverage determination to Goettle. Attached to this Complaint as **Exhibit G** is a true and correct copy of Allied World's October 6, 2017 coverage letter to Goettle.

45. In that letter, Allied World informed Goettle that the 2017-2018 Policy does not provide coverage to Goettle for the Louisiana Action because this matter involves a "Claim" made before, not during, the "Policy Period," because the Insuring Agreement's "no prior knowledge" condition was not met, and because Goettle failed to disclose in the insurance application process the known circumstances that gave rise to the Louisiana Action. Allied World also advised Goettle that coverage does not apply under the prior-year 2016-2017 Policy because the "Claim" was not reported within 60 days after the expiration of that Policy as required for coverage under its Insuring Agreement.[1]

46. An actual and justiciable controversy exists between Allied World and Goettle.

47. Allied World accordingly filed this action to seek a declaratory judgment that it owes no coverage obligations to the Goettle under the 2016-2017 and 2017-2018 Policies.

---

[1] Allied World's October 6, 2017 coverage letter to Goettle also identified several other potential coverage issues involving the Louisiana Action, and Allied World reserved all of its rights as to those issues as well.

## COUNT I
### (Declaratory Judgment – Not A "Claim" Made During the 2017-2018 Policy Period)

48. Allied World repeats and re-alleges paragraphs "1" through "47" as if set forth fully and incorporated herein.

49. As set forth in its Insuring Agreement, the 2017-2018 Policy generally provides claims-made-and-reported coverage to Goettle for professional liability claims. The 2017-2018 Policy defines a "Claim" to include "any demand or notice received by an **Insured** alleging a **Wrongful Act**," and in turn, a "Wrongful Act" is defined include "a negligent act, error or omission" allegedly committed in the course of Goettle's defined "Professional Services."

50. Subsection B.3 of the Insuring Agreement provides, as a condition of coverage, "**Any Claim** must first be made against the **Insured** during the **Policy Period**."

51. A "Claim" was made against Goettle in this matter no later than June 1, 2017, when Mr. Atkinson of JGCI forwarded to Mr. Barlow of Goettle the May 27, 2017 report from Structural Engineering, in which JGCI's geotechnical engineering expert asserted "some errors and omissions" that concerned him, including a "lack of certain calculations and lack of control on the work in the plans." At "summary point" number 10 of the May 27, 2017 report, JGCI's geotechnical engineering expert also noted "errors and omissions in the calculations and plans" and an "incorrect geotechnical design."

52. Those alleged "errors and omissions" are the same purported breaches of duty that JGCI asserts again Goettle in the Louisiana Action. Indeed, the complaint in the Louisiana Action alleges, "Goettle has been given notice of the failure of, and defects in, the truck dump,

13

including the retaining walls, and the expert findings regarding the defective design and construction of the 'bin wall' retaining wall." (Ex. B at ¶ 36).

53. Given the multiple assertions of "errors and omissions" in Goettle's calculations, plans and purportedly "incorrect geotechnical design," Goettle received notice alleging a "Wrongful Act" no later than June 1, 2017, and therefore this matter was a "Claim" made and asserted against Goettle before the June 28, 2017 effective date of the 2017-2018 Policy.

54. Because the circumstances alleged in the Louisiana Action do not constitute a "Claim" made during the 2017-2018 Policy Period, Allied World is entitled to a judgment declaring there is no coverage under the 2017-2018 Policy for the Louisiana Action.

## COUNT II
### (Declaratory Judgment – The "No Prior Knowledge" Coverage Condition Not Satisfied)

55. Allied World repeats and re-alleges paragraphs "1" through "54" as if set forth fully and incorporated herein.

56. Subsection B.2 of the 2017-2018 Policy's Insuring Agreement provides, as a condition of coverage:

> Prior to the Effective Date of this Policy, no officer, director, principal, partner insurance manager, risk manager or in-house counsel of any **Insured** had knowledge of any actual or alleged **Wrongful Act**, **Pollution Condition** or circumstance that reasonably could give rise to a **Claim** under this Policy. If such officer, director, principal, partner, insurance manager, risk manager or in-house counsel of any **Insured** knew, prior to the effective date of this Policy, of any **Wrongful Act** or **Pollution Condition** or circumstance that reasonably could give rise to a **Claim** under this Policy, then any continuation, change or resumption of such **Wrongful Act**, **Pollution Condition** or circumstance during or after this **Policy Period** will be deemed to have been known prior to this **Policy Period**.

57. Mr. Barlow forwarded the June 1, 2017 email from Mr. Atkinson with its original attachment, the May 27, 2017 report from Structural Engineering, to several individuals within Goettle. They included Doug Keller (President & CEO), Eric Risberg (Vice President), Brian Heck (Vice President) and Aaron Klingshirn (Engineer).

58. As set forth above, the May 27, 2017 Structural Engineering report included multiple assertions of "errors and omissions" by Goettle.

59. By June 1, 2017, therefore, an "officer, director, principal [or] partner …" of Goettle "had knowledge of any … alleged [negligent act, error or omission] … or circumstance that reasonably could give rise to a **Claim**" under the Policy, and condition B.3 of the Insuring Agreement is not satisfied.

60. Because the "no prior knowledge" condition of the Insuring Agreement is not satisfied, Allied World is entitled to a judgment declaring there is no coverage under the 2017-2018 Policy for the Louisiana Action.

## COUNT III
**(Declaratory Judgment – Failure to Disclose Known Pre-Policy Circumstances)**

61. Allied World repeats and re-alleges paragraphs "1" through "60" as if set forth fully and incorporated herein.

62. In its Application for the 2017-2018 Policy, Goettle was asked whether "any partners, principals, directors, officers, or employees" of Goettle had "knowledge of any act, error or omission, unresolved job dispute … or any other circumstance that is or could be the basis for a claim under this proposed insurance policy." Goettle responded, "No," but it

expressly represented that, if that information changed before the effective date of the Policy, it would notify Allied World.

63. No later than June 1, 2017, Goettle project manager Humphrey Barlow was provided with the May 27, 2017 "initial geotechnical review" report by Structural Engineering, which alleged multiple "errors and omissions" in Goettle's calculations, plans and a purportedly "incorrect geotechnical design" for TD6 at the Dolet Hills Mine. Mr. Barlow forwarded that email and report on June 1, 2017 to Doug Keller (President & CEO of Goettle), Aaron Klingshirn (an Engineer at Goettle), Eric Risberg (a Vice President at Goettle) and Brian Heck (also a Vice President at Goettle), all of whom work for Goettle. All of these individuals are at least "employees" of Goettle, and some are "partners, principals, directors or officers."

64. Goettle did not notify Allied World, as Goettle represented and promised it would do in its insurance Application, that the information in response to Question 21 had changed and Goettle in fact did come to have "knowledge of any act, error or omission, unresolved job dispute … or any other circumstance that is or could be the basis for a claim under this proposed insurance policy."

65. Because Goettle failed to disclose the circumstances of the allegedly defective design and construction of TD6 at the Dolet Hills Mine, then, as per the bolded language in Question 21 of the Application, "**ANY CLAIM ARISING THEREFROM IS EXCLUDED**" and Allied World is entitled to a judgment declaring there is no coverage under the 2017-2018 Policy for the Louisiana Action.

## COUNT IV
## (Declaratory Judgment – Not A "Claim" Reported During
## the 2016-2017 Policy Period)

66. Allied World repeats and re-alleges paragraphs "1" through "65" as if set forth fully and incorporated herein.

67. This matter was a "Claim" made against Goettle no later than June 1, 2017.

68. Goettle first provided notice of this matter – notified as a "NOTICE OF POTENTIAL CLAIM" in the "Notice of Occurrence/Claim" form – on August 30, 2017.

69. Goettle did not report the "Claim" involving problems with its designs at the Dolet Hills Mine "within sixty (60) days after the end of the **Policy Period**," as required by the Insuring Agreement of the 2016-2017 Policy. Coverage is not available, therefore, under that claims-made-and-reported Policy either.

70. Goettle's August 30, 2017 first notice of this matter to Allied World came "later than sixty (60) days after the expiration date … of the [June 28, 2016 to June 28, 2017] Policy," which did not comport with the "condition precedent to the right of coverage" found at Section VIII. CONDITIONS of the 2016-2017 Policy.

71. Because Goettle first reported this matter to Allied World more than 60 days following the expiration of the "Policy Period" of the 2016-2017 Policy, Allied World is entitled to a judgment declaring there is no coverage under the 2016-2017 Policy for the Louisiana Action.

**REQUESTS FOR RELIEF**

WHEREFORE, Plaintiff Allied World Surplus Lines Insurance Company respectfully requests a Judgment in its favor as follows:

A. For Count I, a judgment declaring that, because the circumstances alleged in the Louisiana Action do not constitute a "Claim" made during the 2017-2018 Policy Period, there is no coverage under the 2017-2018 Policy for the Louisiana Action;

B. For Count II, a judgment declaring that, because the "no prior knowledge" condition of the Insuring Agreement is not satisfied, there is no coverage under the 2017-2018 Policy for the Louisiana Action;

C. For Count III, a judgment declaring that, because Goettle failed to disclose to Allied World, before the effective date of the 2017-2018 Policy, as required by the Application for that Policy, the circumstances of the allegedly defective design and construction of TD6 at the Dolet Hills Mine, there is no coverage under the 2017-2018 Policy for the Louisiana Action;

D. For Count IV, a judgment declaring that, because Goettle first reported this matter to Allied World more than 60 days following the expiration of the "Policy Period" of the 2016-2017 Policy, there is no coverage under the 2016-2017 Policy for the Louisiana Action; and

E. For such other and further relief as this Court may deem just and appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Allied World Surplus Lines Insurance Company demands trial by jury in this action of all issues so triable.

Dated: October 6, 2017
       Cincinnati, Ohio

                        Respectfully submitted,

                        LEWIS BRISBOIS BISGAARD
                          & SMITH, LLP


By:   /s Laura E. Salzman
       Laura E. Salzman (0095304)
         Email:  laura.salzman@lewisbrisbois.com
       909 Wright Summit Parkway, Suite 230
       Fort Wright, Kentucky  41011
       Phone:  (859) 663-9830
       Fax: (859) 663-9829

       OF COUNSEL:
       KAUFMAN DOLOWICH
         & VOLUCK, LLP
       Patrick M. Kennell
         Email: pkennell@kdvlaw.com
       Kevin M. Mattessich
         Email:  kmattessich@kdvlaw.com
       40 Exchange Place – 20th Floor
       New York, New York  10004
       Phone:  (212) 485-9600

       *Attorneys for Plaintiff*
       ALLIED WORLD SURPLUS LINES
       INSURANCE COMPANY