IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Allied World Surplus Lines Insurance Company, | : | Case No. 1:17-cv-670 |
| | : | |
| Plaintiff/Counterclaim Defendant, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | Order Granting Motion to Enforce and |
| | : | Deny Cross-Motion to Stay Enforcement. |
| Richard Goettle, Inc., | : | |
| | : | |
| Defendant/Counterclaim Plaintiff. | : | |

Pending before the Court are Richard Goettle, Inc's Motion to Enforce the Court's May 28, 2019 Order (Doc. 79) and Allied World Surplus Lines Insurance Company's Cross-Motion to Stay Enforcement (Doc. 85).  In the Motion to Enforce, Goettle asks the Court to order its insurer, Allied World, to pay the defense costs Goettle has incurred in an underlying lawsuit pursuant to Allied World's obligations under a professional liability policy.  Allied World opposes paying the defense costs in part, and it cross-moves for a stay of the enforcement of any order requiring it to pay defense costs pending an appeal to the Sixth Circuit Court of Appeals. For the reasons that follow, the Court will **GRANT** the Motion to Enforce and **DENY** the Cross-Motion to Stay Enforcement pending an appeal.

## I.      BACKGROUND

The Court set forth a comprehensive statement of the facts and procedural history of this Case in in the May 28, 2019 Order on Cross-Motions for Summary Judgment ("Summary Judgment Order") (Doc. 74).  A shorter summary is set forth here.

Allied World provided insurance coverage to Goettle through a professional liability policy.  In August 2017, Goettle notified Allied World about a potential claim against it by Joy Global arising from the Dolet Hills construction project in August 2017.  On September 5, 2017,

1

Goettle sued Joy Global to recover payment for engineering and construction services it rendered to Joy Global on the Dolet Hills project in *Richard Goettle, Inc. v. Joy Global Conveyors, Inc.*, No. 1:17-cv-613 ("the Ohio Contract Action"). On September 6, 2017, Joy Global sued Goettle for negligent design, negligent construction, and breach of contract in *Joy Global Conveyors, Inc. v. Richard Goettle, Inc.*, No. 5:17-cv-1121 (W.D. La.) ("the Louisiana Action"). (Doc. 1-2 at PageID 32–49.) One month later, Allied World formally declined to provide Goettle with defense or indemnity coverage for the Dolet Hills incident. (Doc. 47–19 at PageID 2942–2954.) Goettle, accordingly, began to incur costs in late 2017 to defend itself in the Louisiana Action.

Allied World filed this suit against Goettle seeking a declaration that it owes Goettle no coverage for the Louisiana Action. (Doc. 1.) Goettle filed Counterclaims seeking defense and indemnity coverage and breach of contract damages. (Doc. 7.) The Court held in the Summary Judgment Order that the Policy Form of the 2017–2018 Policy at least potentially provided coverage to Goettle for the Dolet Hills incident. (Doc. 74.) The Court further held that Allied World, therefore, had a duty to defend Goettle, its insured, in the Louisiana Action. (*Id.*)

Goettle now seeks the Court to order Allied World to pay the costs it has incurred defending the Louisiana Action through June 2019. Goettle asserted through the Affidavit of Jeff Ginter, its chief financial officer, that it has incurred and paid $326,051.51 to defend the Louisiana Action. (Doc. 79-8 at PageID 4982.) Those defense costs are summarized as follows:

| | |
|---|---|
| WEINER, WEISS & MADISON | $31,071.24 |
| ROGER HEALEY | $143,476.00 |
| BENESCH ATTORNEYS AT LAW | $68,622.13 |
| DAN BROWN AND ASSOCIATES | $58,164.14 |
| BRAUN INTERTEC | $24,718.00 |

(Doc. 79-1 at PageID 4892; Doc. 82 at PageID 5080.)  Acknowledging a $100,000 deductible, Goettle demanded that Allied World reimburse the remaining $226,051.51 in defense costs.

Allied World agreed to pay some of the costs requested, but it objected that Goettle had not established that other costs requested were incurred in defense of the Louisiana Action.  It suggested that the costs instead might have been incurred in either (1) this Coverage Action or (2) the Ohio Contract Action that both also arose from the Dolet Hills construction project and were pending at the same time.[1]  After an initial round of briefing on the defense costs issue, the Court held a hearing on November 20, 2019 to seek clarification whether the costs arose from work performed in the Louisiana Action, as opposed to in this Coverage Action or in the Ohio Contract Action.  (Doc. 83.)  The Court concluded that Goettle needed to file supplemental evidence, to which Allied World could respond.  The supplemental briefing is complete.[2]

Allied World also has cross-moved for a stay of enforcement if the Court rules against it so that it need not pay the defense costs during its appeal the matter to the Sixth Circuit Court of Appeals.  The parties also have fully briefed this issue.

## II.    MOTION TO ENFORCE

### A.    Standard of Law

"An insurance company must pay for the defense of actions brought against its insured as long as the underlying complaint contains at least one potentially covered claim." *Medpace, Inc. v. Darwin Select Ins. Co.*, 13 F. Supp. 3d 839, 844 (S.D. Ohio 2014) (citing *Ohio Gov't Risk Mgmt. Plan v. Harrison*, 115 Ohio St. 3d 241, 874 N.E.2d 1155, 1160 (2007)).  When an insurer

---

[1]  The Honorable Judge Michael R. Barrett dismissed the Ohio Contract Action for lack of personal jurisdiction over Joy Global in an Opinion and Order dated September 30, 2018.  (No. 1:17-cv-613, Doc. 26-1.)

[2]  Allied World filed a request to strike or ignore a reply brief filed by Goettle in support of its supplemental memorandum.  (Docs. 86, 87.)  Allied World's request was not properly filed as a motion, so the Court does not need to take any action in response to it.  Nonetheless, the Court notes that it did not rely on any new information provided in Goettle's reply brief when adjudicating the pending motions.

has refused to defend its insured in an underlying litigation, and later is determined by a court to have been wrong to refuse, the insurer cannot then "second-guess" the fees and expenses incurred by insured in that underlying litigation. *Abercrombie and Fitch, Co. v. Ace European Group Ltd.*, Nos. 2:11-cv-1114, 2:12-cv-1214, 2014 WL 4915269, at *6–7 (S.D. Ohio Sept. 30, 2014), *aff'd*, 621 F. App'x 338 (6th Cir. 2015). The district court in *Abercrombie* cited at length from and adopted the reasoning of the Seventh Circuit Court of Appeals in an earlier case:

> [Defendant] complains about the amount of defense costs incurred by [Plaintiff]. . . . . We are unimpressed, as was the district court. When [Plaintiff] hired its lawyers, and indeed at all times since, [Defendant] was vigorously denying that it had any duty to defend-any duty, therefore, to reimburse [Plaintiff]. Because of the resulting uncertainty about reimbursement, [Plaintiff] had an incentive to minimize its legal expenses (for it might not be able to shift them); and where there are market incentives to economize, there is no occasion for a painstaking judicial review.
>
> . . . .
>
> Furthermore, although [Defendant]'s policy entitled it to assume [Plaintiff]'s defense, in which event [Defendant] would have selected, supervised, and paid the lawyers for [Plaintiff] in the [underlying] litigation, it declined to do so-gambling that it would be exonerated from a duty to defend-with the result that [Plaintiff] selected the lawyers. Had [Defendant] mistrusted [Plaintiff's] incentive or ability to economize on its legal costs, it could, while reserving its defense that it had no duty to defend, have assumed the defense and selected and supervised and paid for the lawyers defending [Plaintiff] in the [underlying] litigation, and could later have sought reimbursement if it proved that it had indeed had no duty to defend [Plaintiff]. So presumably it had some confidence in [Plaintiff]'s incentive and ability to minimize legal expenses.

*Id.* at *5 (quoting *Taco Bell Corp. v. Cont'l Cas. Co.,* 388 F.3d 1069, 1075–76 (7th Cir. 2004)) (internal citations omitted). Accordingly, the district court in *Abercrombie* ordered the insurance company to reimburse its insured $1.9 million for costs incurred and paid by the insured in the underlying litigation. *Id.* at *7.

## B. Analysis

Goettle seeks the Court to order Allied World to reimburse $226,051.51 it incurred defending itself against the claims asserted by Joy Global. The Court ordinarily would not "second-guess how [Goettle] has chosen to defend [the Louisiana Action] and the amount it has expended in doing so." *Abercrombie*, 2014 WL 4915269, at *7. *Abercrombie* is distinguishable, however, on two bases. First, the insured in *Abercrombie* provided detailed billing records to the Court for its review. (Abercrombie & Fitch Co.'s Brief on Defense Costs, Doc. 80-4.) Goettle provided only summary billing invoices for its attorney fees, not detailed billing records specifying the work performed. Second, *Abercrombie* did not involve a situation where three separate lawsuits between the interested parties were pending simultaneously. Because the circumstances here were different than in *Abercrombie*, the Court sought clarification on whether the fees sought were for work performed in the Louisiana Action. The Court's analysis of each category of fees sought follows.

### 1. Wiener Weiss & Madison

The Wiener law firm is listed as lead counsel of record for Goettle in the Louisiana Action, but Goettle describes it as local counsel. (Doc. 81 at PageID 5069.) Allied World has agreed to pay attorney fees in the amount of $31,071.24 for the services provided by the Wiener firm:

| | | |
|---|---|---|
| 10/07/2017 | Roger CC - Wiener, Weiss & Madison | $3,000.00 |
| 11/07/2017 | WEINER, WEISS & MADISON | $1,472.75 |
| 12/06/2017 | WIENER, WEISS & MADISON | $1,998.85 |
| 01/11/2018 | WIENER, WEISS & MADISON | $638.00 |

| | | |
|---|---|---|
| 02/13/2018 | WIENER, WEISS & MADISON | $182.50 |
| 04/06/2018 | WIENER, WEISS & MADISON | $145.00 |
| 11/09/2018 | WIENER, WEISS & MADISON | $3,940.50 |
| 11/30/2018 | WIENER, WEISS & MADISON | $928.00 |
| 1/8/2019 | WIENER, WEISS & MADISON | $174.00 |
| 02/12/2019 | WIENER, WEISS & MADISON | $5,238.75 |
| 02/28/2019 | WIENER, WEISS & MADISON | $1,073.00 |
| 03/31/2019 | WIENER, WEISS & MADISON | $3,691.64 |
| 05/09/2019 | WIENER, WEISS & MADISON | $946.75 |
| 06/06/2019 | WIENER, WEISS & MADISON | $6,191.50 |
| 7/9/2019 | WIENER, WEISS & MADISON | $1,450 |
| | | $31,071.24 |

(Doc. 79-1 at PageID 4892; Doc. 80 at PageID 4984, 4989.)

**2.      Roger Healey, Esq.**

Roger Healey was admitted to appear *pro hac vice* as Goettle's attorney in the Louisiana Action on October 18, 2017.  Of note, he was employed as Goettle's general counsel until July 1, 2018.  (Doc. 79-3 at PageID 4960; Doc. 83 at PageID 5115.)  He continues to serve as Goettle's lead counsel in the Louisiana Action.  (Doc. 82-1 at PageID 5084.)  Goettle seeks $143,476 for fees paid to Healey as follows:

| | | |
|---|---|---|
| 7/29/2018 | ROGER HEALEY | $2,126.00 |
| 8/31/2018 | ROGER HEALEY | $3,325.00 |
| 9/30/2018 | ROGER HEALEY | $21,525.00 |

| | | |
|---|---|---|
| 10/31/2018 | ROGER HEALEY | $20,000.00 |
| 11/30/2018 | ROGER HEALEY | $10,100.00 |
| 12/31/2018 | ROGER HEALEY | $3,500.00 |
| 1/31/2019 | ROGER HEALEY | $11,700.00 |
| 2/28/2019 | ROGER HEALEY | $9,775.00 |
| 3/31/2019 | ROGER HEALEY | $18,075.00 |
| 4/30/2019 | ROGER HEALEY | $10,425.00 |
| 5/21/2019 | ROGER HEALEY | $18,450.00 |
| 6/20/2019 | ROGER HEALEY | $14,475.00 |
| | | $143,476 |

(Doc. 79-1 at PageID 4892; Doc. 82 at PageID 5080.)

Allied World initially questioned the invoices submitted by Healey because significant fees were incurred when proceedings in the Louisiana Action were stayed by court order and when there were limited filings in the Louisiana Action. At the hearing, counsel for Goettle explained that Healey helped prepare Goettle witnesses for their depositions and attended the depositions taken in this case in an effort to help defend Goettle in the Louisiana Action. (Tr., Doc. 83 at PageID 5118.) Goettle later filed an Affidavit by Healey to support the hearing argument. Healey averred that the fees and costs he invoiced to Goettle, and that Goettle now seeks to recover as defense costs, were "reasonably incurred by me in my representation and the defense of Goettle in the Louisiana Action." (Doc. 82-1 at PageID 5085.)

In response, Allied World argued that Goettle should not be awarded defense costs for the time Healey spent in preparation for and attendance at depositions in this case. Allied World argued that the depositions from this case will not be admissible in the Louisiana Action because

proceedings in that case were stayed and because Joy Global was not provided with notice of the depositions. However, Allied World's argument misses the mark. This Court need not speculate for what purpose the depositions taken here might be offered and admitted in the Louisiana Action. Allied World has not cited any authority for the proposition that defense costs are limited to only costs incurred in pursuit of admissible evidence. Allied World's argument in the end challenges the reasonableness of Healey's fees, and that is impermissible under *Abercrombie*. *See* 2014 WL 4915269, at *6–7. The Court will award Goettle defense costs for the services provided by Healey in the amount of $143,476.

### 3. Benesch Attorneys at Law

Goettle seeks $68,622.13 in defense costs for payments made to Benesch Attorneys at Law as follows:

| 10/16/2017 | BENESCH ATTORNEYS AT LAW | $3,884.50 |
| 11/16/2017 | BENESCH ATTORNEYS AT LAW | $34,454.98 |
| 12/13/2017 | BENESCH ATTORNEYS AT LAW | $22,785.15 |
| 1/22/2018 | BENESCH ATTORNEYS AT LAW | $439.00 |
| 4/30/2018 | BENESCH ATTORNEYS AT LAW | $1,122.00 |
| 5/14/2018 | BENESCH ATTORNEYS AT LAW | $204.00 |
| 6/23/2018 | BENESCH ATTORNEYS AT LAW | $185.50 |
| 10/18/2018 | BENESCH ATTORNEYS AT LAW | $575.00 |

| 11/27/2018 | BENESCH ATTORNEYS AT LAW | $4,972.00 |
| | | $68,622.13 |

(Doc. 79-1 at PageID 4892; Doc. 82 at PageID 5080.)

Allied World initially questioned whether the fees incurred by the Benesch firm were for the defense of Goettle in the Louisiana Action because the Benesch firm was listed as Goettle's counsel of record only in the Ohio Contract Action, not in the Louisiana Action. The Benesch billing entries roughly track the time period the Ohio Contract Action was pending from September 2017 to early October 2018. *Id.*

Following the hearing, Goettle submitted the Healey Affidavit and the Affidavit of Richard Kalson, a partner at the Benesch, to support these purported defense costs. Healey and Kalson explained that Benesch provided legal services in both the Louisiana Action and in the Ohio Contract Action on matters related to which court forum ultimately would decide the merits of Joy Global's claim against Goettle for design defect— the claim for which Goettle seeks defense coverage under the 2017–2018 Policy. (Healey Aff., Doc. 82-1 at PageID 5085–5088; Kalson Aff., Doc. 82-4 at PageID 5108–5109.)[3] Joy Global asserted the design defect claim against Goettle in the Louisiana Action, but Goettle reasonably anticipated that Joy Global would be required to file the design defect claim as a compulsory counterclaim in the Ohio Contract Action if Judge Barrett elected to retain that case. Therefore, the Benesch firm's efforts to prevent Judge Barrett from transferring or dismissing the Ohio Contract Action was in furtherance of Goettle's defense strategy to have the design defect claim against it heard in Ohio, not Louisiana. The work was inextricably intertwined with the defense of the Louisiana Action.

---

[3] Both attorneys specifically averred that the Benesch firm did not provide any services or seek fees with respect to Goettle's Complaint against Joy Global in the Ohio Contract Action. (Healey Aff., Doc. 82-1 at PageID 5087–5088; Kalson Aff., Doc. 82-4 at PageID 5109.)

The Court will award Goettle defense costs for the services provided by the Benesch firm in the amount of $68,622.13.

### 4. Dan Brown and Associates and Braun Intertec

Goettle seeks defense costs in the amount of $58,164.14 for services provided by Dan Brown and Associations, P.C. ("DBA") as follows:

| 09/06/17 | DBA | $6,315.00 |
|---|---|---|
| 0/02/17 | DBA | $14,285.00 |
| 10/31/17 | DBA | $1,185.00 |
| 11/27/17 | DBA | $4,170.00 |
| 01/08/18 | DBA | $21,207.69 |
| 04/09/18 | DBA | $7,257.67 |
| 05/07/18 | DBA | $3,743.78 |
| | | $58,164.14 |

(Doc. 79-1 at PageID 4892; Doc. 82 at PageID 5080.)[4]

Likewise, Goettle seeks $24,718 in defense costs for fees paid to Braun Intertec as follows:

| 01/26/18 | BRAUN INTERTEC CORPORATION | $18,135.60 |
|---|---|---|
| 04/20/18 | BRAUN INTERTEC CORPORATION | $6,582.40 |
| | | $24,718.00 |

(Doc. 79-1 at PageID 4892; Doc. 82 at PageID 5080.)

---

[4] This total includes a deduction of $2,340 from the invoice dated September 6, 2017 for costs incurred before Goettle gave notice of the claim to Allied World in August 2017. (Doc. 79-3 at PageID 4960.)

Allied World questioned whether DBA's fees all arose from the defense of the Louisiana Action because the invoices bill separately for "Litigation Services," "Field Observation," and "Expert Consultant Services." (Doc. 79-1 at PageID 4898–4901, 4904, 4906, 4909–4911, 4917–4918, and 4921.) Allied World agreed to pay only $35,300.36 for DBA fees incurred as "Litigation Services." (Doc. 80 at PageID 4989.) As to Braun Intertec, Allied World asserted that the Braun Intertec invoices did not demonstrate that the fees incurred were for the defense of the Louisiana Action.

The Court indicated its preliminary approval of the costs submitted for DBA and Braun Intertec at the November 20, 2019 hearing:

> I'm satisfied that regardless of what they called it, it's -- it was for the litigation. Because they've pretty much -- they've already detailed their bills, and it all looks like it's for the litigation. I'm satisfied on Dan Brown.
>
> * * *
>
> The same on Intertec. That was the only work they were doing for Goettle. So I think it's sufficient.

(Tr., Doc. 83 at PageID 5141–5142.) However, the Court agreed with Allied World's request that Goettle provide its engagement letters for DBA and Braun Intertec after the hearing. (*Id.* at PageID 5143.) As explained below, the supplemental documents provided do not add much new information, but they do support the Court's initial approval.

Healey, then the general counsel for Goettle, stated in his Affidavit that he retained DBA "to provide consulting services for the Louisiana Action." (Doc. 82-1 at PageID 5088.) DBA's engagement letter dated August 21, 2017 stated that it would "perform an independent review of the anchored wall at the Joy Global facility in Mansfield, Louisiana." (Doc. 82-2 at PageID 5092.) Allied World complained that Goettle engaged DBA before Joy Global sued Goettle in the Louisiana Action on September 6, 2017. However, that ignores the fact that Goettle

reasonably could have anticipated Joy Global's suit because Joy Global gave Goettle formal notice on August 10, 2017 that it considered Goettle to be in breach of the contract. (Doc. 43-7 at PageID 1193–1194.) The Court will award Goettle defense costs for the services provided by DBA in the amount of $58,164.14.

Similarly, Healey averred that he also hired Braun Intertec "to provide expert services for the Louisiana Action." (Doc. 82-1 at PageID 5089.) Braun Intertec was retained in late November 2017, after Joy Global sued Goettle in the Louisiana Action. (Doc. 82-3 at PageID 5099.) Its scope of work was to provide "drilling, soil sampling, and laboratory soils testing services" at the retaining wall. (*Id.* at PageID 5013.) Goettle's attorney vouched at the hearing that "one of the major issues in Louisiana is whether the owner's soil contractors didn't properly compact the soils and put improper soil in." (Tr., Doc. 83 at PageID 5140.) The Court accepts the explanation by Goettle and will award it defense costs for the services provide by Braun Intertec in the amount of $24,718.

## C. Conclusion

The Court determined in the Summary Judgment Order that Allied World had a duty to defend Goettle against the claims made by Joy Global in the Louisiana Action. Though it was reasonable under the procedural circumstances here for Allied World to question whether the fees sought were incurred by Goettle in its defense against the claims made by Joy Global, the Court has determined that the fees sought are recoverable. Accordingly, Court will grant Goettle's Motion to Enforce and compel Allied World to pay Goettle $226,051.51 in defense costs.

## III. CROSS-MOTION TO STAY ENFORCEMENT PENDING APPEAL

Allied World moves the Court to stay enforcement of this Order to pay defense costs pending an appeal. "[A]n order requiring an insurer to advance defense costs in an underlying action, while the coverage action is unresolved, is an immediately appealable injunction." *Abercrombie*, 2014 WL 4915269, at *9. A district court has authority pursuant to Rule 62 of the Federal Rules of Civil Procedure to stay an order granting an injunction pending the appeal. The district court in *Abercrombie* granted the insurance company's motion to stay enforcement of the order to pay defense costs while the insurance company pursued an appeal. *Id.* at *9–11. As to whether to grant a stay during an appeal, the *Abercrombie* court examined the following four factors:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991)). The *Abercrombie* court determined after a cursory review of those factors to stay its order. *Id.*[5] Goettle now argues that despite the *Abercrombie* precedent, a stay is not warranted here under a more robust examination of the four factors. The Court, therefore, turns to the analysis of the four factors first set forth in *Michigan Coalition* and later re-stated in *Abercrombie*.

First, the Court asks if Allied World has demonstrated a likelihood of success on the merits. *Mich. Coal.*, 945 F.2d at 153. Because a motion for stay pending appeal is taken after a

---

[5] On appeal, the Sixth Circuit affirmed the decisions of the district court holding that the insurer had a duty to defend its insured and ordering it to pay past defense costs. *ACE European Grp., Ltd. v. Abercrombie & Fitch Co.*, 621 F. App'x 338, 339 (6th Cir. 2015). The Sixth Circuit did not address whether the decision to stay the defense costs order was appropriate.

full consideration of the merits in the pending lawsuit, "a party seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal." *Id.* "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the movant] will suffer absent the stay." *Id.* However, the Sixth Circuit instructed that the movant must show "serious questions going to the merits" even if the risk of irreparable harm is great. *Id.*

The district court in *Abercrombie*, examining this first factor, refused to express a lack of confidence in the merits of the decision it had reached. 2014 WL 4915269, at *9. It acknowledged that there were "legitimate questions to be answered," without explaining what those legitimate questions were. Instead, the *Abercrombie* court only stated that the case presented "a very important legal issue with a great deal of money at stake" and involved "experienced attorneys . . . asserting valid legal arguments." *Id.* Like the *Abercrombie* court, this Court does not believe that there is likelihood that its Summary Judgment Order will be reversed. The Court does recognize that serious questions on the merits of the Summary Judgment Order and this Order exist. The Summary Judgment Order presented difficult issues of contract interpretation where the main policy and the endorsements contained possibly conflicting provisions. This Order requires analyzing whether defense costs are payable in unusual procedural circumstances where the insured was involved in multiple, overlapping lawsuits, represented by different sets of counsel, arising from the same event. These issues warrant appellate review.

Next, the Court examines whether Allied World faces irreparable harm. *Mich. Coal.*, 945 F.2d at 153. Courts evaluate irreparable harm based on "its substantiality, the likelihood of its occurrence, and the proof provided by the movant." *Id.* at 155. The movant must have evidence

that the harm alleged is "certain and immediate," not "speculative or theoretical." *Id.* at 154.

Mere monetary damage is unlikely to constitute irreparable harm. *Id.*; *see also Baker v. Adams Cty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 930 (6th Cir. 2002) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough") (citation omitted). Allied World argues that it will incur irreparable harm to the extent that will expend time and resources to adjust Goettle's defense in the Louisiana Action. The district court in *Abercrombie* concluded that the "transaction costs of assuming that [defense] duty" constituted irreparable harm. *See* 2014 WL 4915269, at *10. However, the Court disagrees in this case. Allied World has not indicated that it intends to step in and take over Goettle's defense in the Louisiana Action. It already is a party to the Louisiana Action itself. Allied World has not established it will suffer irreparable harm in the form of non-monetary transaction costs if it must periodically review and pay Goettle's defense costs.[6]

The Court also examines the prospect of harm to others. *Mich. Coal.*, 945 F.2d at 153. Goettle suffers if the Court stays this enforcement order. Goettle already has incurred, wrongly in this Court's estimation, costs to defend itself in the Louisiana Action. Staying this Order pending appeal extends that harm into the future.

Finally, the Court examines the public interest. *Mich. Coal.*, 945 F.2d at 153. The *Abercrombie* concluded that the public interest was served by staying enforcement of the order to pay defense costs to "ascertain[ ] liability first and require[e] parties to pay once determined legally responsible." 2014 WL 4915269, at *10. This analysis, however, is inconsistent with the general recognition that "[e]nforcement of contractual duties is in the public interest." *Certified*

---

[6] Additionally, an insurer's duty to defend is broad, broader than the duty to indemnify. Allied World contractually agreed to provide a defense to Goettle in any suit in which there was a potentially covered claim made against Goettle. At least one court in the Sixth Circuit has concluded that court orders enforcing a contractual duty to defend do not cause irreparable harm to an insured. S*ee Travelers Prop. Cas. Co. v. R.L. Polk & Co.*, No. 06-12895, 2008 WL 3843512, at *2–3 (E.D. Mich. Aug. 13, 2008).

*Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007); *see also Travelers Prop. Cas. Co.*, 2008 WL 3843512, at *3 ("[T]he public has an interest in seeing that parties to a contract are held to their obligations."). Allied World contractually assumed the duty to pay Goettle's defense costs if the claim arguably was covered by the 2017–2018 Policy. The public interest weighs in favor of enforcement of that duty, even pending appeal.

The Court concludes that the *Michigan Coalition* factors do not weigh in favor of a stay pending the anticipated appeal. Allied World has established only serious questions on the merits, but not a likelihood of success nor irreparable harm if it is required to reimburse Goettle's defense costs before an appeal is resolved. Any risk of harm to Allied World is outweighed by the risk of harm to Goettle by requiring it to continue to bear its own defense costs in the Louisiana Action and by the public interest in favor of enforcing the duty to defend in insurance contracts.

## IV.    CONCLUSION

For the foregoing reasons, Goettle's Motion to Enforce the Court's May 28, 2019 Order (Doc. 79) is **GRANTED**. Allied World must pay Goettle $226,051.51 in defense costs. Additionally, Allied World's Cross-Motion to Stay Enforcement (Doc. 85) pending the anticipated appeal is **DENIED**.

**IT IS SO ORDERED.**

Dated this 24th day of February, 2020.

BY THE COURT:

S/Susan J. Dlott
_____
Susan J. Dlott
United States District Judge