## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**ALLIED WORLD SURPLUS LINES
INSURANCE COMPANY,**

        **Plaintiff/Counter-
        Defendant,**

  **v.**

**RICHARD GOETTLE, INC.,**

      **Defendant/Counterclaimant.**

**Case No. 1:17-cv-670**

**JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

At its heart, every insurance dispute asks one simple question: who is left holding the bag? Whether an insured has incurred a loss either due to an adverse judgment or instead as a result of harms that befell his person or property, insurance law has developed intricate rules to decide who—as between the insured or the insurer—must bear the costs of that loss. This case presents a unique twist on this age-old question. Defendant/Counterclaimant Richard Goettle, Inc., (Goettle) recently settled a lawsuit brought against it by third-party claimant Joy Global Conveyors, Inc., (JGC), in the United States District Court for the Western District of Louisiana.[1] That underlying suit was the basis for this separate coverage action in which Plaintiff/Counter-Defendant Allied World Surplus Lines Insurance Company (Allied World) claimed it had no duty to defend or to indemnify Goettle in the

---

[1] The Court "may take judicial notice of proceedings in other courts of record." *Dates v. HSBC*, ___ F. Supp. 3d ___, 2024 WL 860918, at *1 n.1 (S.D. Ohio 2024) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969)).

Louisiana lawsuit. Goettle now contends Allied World must pay for the entire value of the settlement in that action. According to Goettle, that is because (1) the prior assigned judge's summary judgment ruling in this coverage dispute, while directed solely at the duty to defend, in fact conclusively established Allied World's indemnification obligations, and (2) Allied World cannot object to paying for the settlement because it wrongfully refused to defend Goettle in the underlying suit.

As explained below, the Court concludes that Goettle's two arguments do not carry the day. As to the former, Goettle overstates the scope of the prior assigned judge's summary judgment ruling. And as to the latter, assuming without deciding that Allied World wrongfully refused to defend Goettle, under Ohio law, an insurer's wrongful refusal to defend, while it may limit the insurer's ability to rely on certain defenses to coverage, does not expand the scope of coverage otherwise available under an insurance contract. And because there is an open question about the extent to which the insurance policy here requires Allied World to cover the settlement costs of the underlying suit, the Court **DENIES** Goettle's Motion to Enforce Court's March 28, 2019,[2] Order and Order for Payment of Settlement Funds (Doc. 105).

## BACKGROUND

Goettle, an Ohio engineering and construction company, contracted with Allied World, an insurance subsidiary specializing in professional liability policies for

---

[2] The title of Goettle's motion refers to a "March 28, 2019, Order" but no such thing exists. The Court presumes that this is a clerical error given the substance of the motion refers to docket entry 74—the prior-assigned judge's *May* 28, 2019, Order on the parties' cross-motions for summary judgment. (Doc. 74). It appears that Goettle has referred to this non-existent "March 28, 2019, Order" twice before. (Docs. 75, 79).

engineering and contracting firms, for a claims-made[3] Constructors Professional Liability and Protective Policy (the 2016–2017 Policy) covering the period between June 28, 2016, and June 28, 2017. (Doc. 41-3; Doc. 74, #4760–62). After Goettle submitted a renewal application on March 29, 2017, Allied World renewed the policy (the 2017–18 Policy) with the same material provisions (with the exception of the policy's limits, which were increased from $5 million to $10 million) for an additional year of coverage. (Doc. 41-7; Doc. 74, #4767–69).

Under both policies, Allied World generally agreed to cover losses arising from negligence on Goettle's part in rendering its engineering services, subject to exclusions for Goettle's services that resulted in either faulty construction or faulty workmanship. (Doc. 41-3, #652–53, 656–57, 661–62; Doc. 41-7, #715–16, 719–20, 724–25; Doc. 74, #4762–64). The parties expanded the scope of this coverage to include coverage for pollution events (e.g., discharge of contaminating materials into the environment) for both policy periods. The parties accomplished this by executing a pollution endorsement (Endorsement 7). (Doc. 41-3, #646–51; Doc. 41-7, #709–14; Doc. 74, #4765–67, 4780–84). The policy language also obligated Goettle, as a condition precedent to coverage, to provide Allied World with written notice of any claim that could result in a covered loss. The timing of the required notice differed

---

[3] Insurance policies generally come in two forms: claims-made and occurrence-based policies. Occurrence policies provide coverage so long as the event occurred during the policy period, regardless whether the insured requested coverage during the period. Claims-made policies by contrast provide coverage only for claims that are reported to the insurer during the policy term (with the policy also usually providing a short window for late reporting after the term otherwise expires). In this case, Allied World issued a claims-made policy that provided coverage only for covered events that Goettle reported during the policy period or within 60 days after its expiration. (Doc. 41-3, #646, 652; Doc. 41-7, #709, 715).

depending on whether the loss fell within the ambit of Endorsement 7 or instead under the original policy language itself.[4] (Doc. 41-3, #663–64; Doc. 41-7, #726–27; Doc. 74, #4764–65). Finally, under the policies, Allied World had a duty to defend Goettle (up to policy limits) against "any Claim … even if the allegations of the Claim are groundless, false or fraudulent." (Doc. 41-3, #653).

The events prompting this coverage action and the related suit in federal court in Louisiana arise from work Goettle performed for JGC at the Dolet Hills coal mine near Mansfield, Louisiana. (Doc. 74, #4769). JGC contracted for Goettle to construct a retaining wall used to support ramps dump trucks utilized for hauling lignite coal throughout the site. Goettle began work on the project in November 2016. (*Id.*). Alas, the retaining wall did not withstand the test of time. On April 18, 2017, JGC observed

---

[4] The prior assigned judge, in her ruling on the parties' cross motions for summary judgment, held that Endorsement 7 expanded, but did not supplant, coverage under the Policy. (Doc. 74, #4784–85). Based on that ruling, Endorsement 7 and the original policy language were deemed to be mutually exclusive as to the claims they each covered: claims arising from pollution events fell under the terms of Endorsement 7, whereas claims arising from non-pollution events fell under the original policy language. (*Id.*). The then-assigned judge reached this holding, later affirmed on appeal, (Doc. 97, #5377–78), based on ambiguities that would be created were Endorsement 7 read to supplant language in the original policy and to apply to claims arising under both pollution and non-pollution events. (Doc. 74, #4781–84). For example, the then-assigned judge noted that if Endorsement 7 governed non-pollution events, mere notice to Goettle that a third-party claimant might demand payment from Goettle for negligent engineering services would trigger Goettle's duty to notify Allied World of the potential claim. (*Id.* at #4782–83 (citing Doc. 41-7, #709, 711)). By contrast, under the original policy language not supplanted by Endorsement 7, Goettle was also given the choice whether to provide Allied World notice of the same potential non-pollution event immediately or upon "the Potential Claim['s] matur[ation] into … a demand for payment or services." (*Id.* at #4782 (citing Doc. 41-7, #727)). In other words, Goettle would face two conflicting reporting obligations if both Endorsement 7 and the original policy language applied to the same non-pollution event. The then-assigned judge concluded that given Ohio law resolves such ambiguities in favor of the insured, Endorsement 7 just provided additional coverage specific to pollution events. (*Id.* at #4780). And, as noted immediately above, the Sixth Circuit has since affirmed that holding.

seepage through the slats in the retaining wall and heard loud noises emanating from it. (*Id.*). JGC notified Goettle three days later via email with pictures documenting the abnormalities. (*Id.* at #4769–70). From April 2017, until August 10, 2017, Goettle and JGC communicated frequently to assess the structural integrity of the retaining wall, to make an action plan to respond to its current state, and, eventually, to repair it. (*Id.* at #4770–72). Of note, JGC sent Goettle an email on June 1, 2017, including a geotechnical report from an outside engineering firm identifying certain "errors and omissions" in Goettle's design of the retaining wall. (Doc. 59-13, #4010–12). At that time, JGC intended its email "to further discussions about repairing the wall and 'not to assign fault or to make a claim against any particular party.'" (Doc. 74, #4770–71 (quoting Doc. 60-1, #4054)).

Despite several months of discussions, the parties did not ultimately resolve the structural issues with the wall. So, on August 10, 2017, JGC provided Goettle its formal notice that JGC believed Goettle was in breach of their contract for its "defective … design and construction" of the retaining wall and explained that it would resort to legal action if Goettle failed to cure in a timely fashion. (Doc. 74, #4772 (quoting Doc. 43-7, #1193–94)). Shortly thereafter, on September 6, 2017, JGC sued Goettle in the United States District Court for the Western District of Louisiana raising claims of negligent design, negligent construction, and breach of contract (for violating the alleged contractual duties to provide a defect-free wall in both its design and construction as well as the duty to indemnify JGC for expenses and fees incurred

because of such defects). Complaint at 11–15, *Joy Glob. Conveyors Inc. v. Richard Goettle, Inc.*, No. 5:17-cv-1121 (W.D. La. Sept. 6, 2017), ECF No. 1.[5]

Goettle's general counsel first learned of the incident involving the Dolet Hills retaining wall from the August 10, 2017, letter JGC sent notifying Goettle of its belief that the latter was in breach of their contract. (Doc. 74, #4772). Via its insurance broker, Goettle thereafter notified Allied World of this potential claim on August 30, 2017. (*Id.* at #4772–73). Ultimately, on October 6, 2017, Allied World issued its coverage determination. In that letter, it both denied any obligation to indemnify Goettle for any aspect of the dispute between Goettle and JGC and also denied any duty to cover the costs of Goettle's defense of the Louisiana lawsuit. (*Id.* at #4773–74 (citing Doc. 47-19, #2954)).

The same day it issued its denial of coverage, Allied World brought this declaratory judgment action. In the action, it requested a declaration that it has no obligation to defend or to indemnify Goettle for any loss arising from the Dolet Hills retaining wall incident. (Doc. 1, #13–17).

In its Complaint, Allied World asserted four bases for believing that the policies it issued did not cover the Dolet Hills incident. First in Count I, it alleged that the 2017–2018 Policy did not apply because the June 1, 2017, email from JGC to Goettle constituted a claim against Goettle under the provisions of Endorsement 7,

---

[5] JGC twice amended its complaint in the Louisiana action: first, to add Allied World as a defendant under Louisiana's direct-action statute, First Amended Complaint at 17–20, *Joy Glob. Conveyors Inc.*, No. 5:17-cv-1121 (W.D. La. Oct. 30, 2017), ECF No. 22; *see* La. Stat. Ann. § 22:1269, and second, to demand the return of all monies JGC paid Goettle under their contract, Second Amended Complaint at 26, *Joy Glob. Conveyors Inc.*, No. 5:17-cv-1121 (W.D. La. Nov. 13, 2019), ECF No. 77.

which meant that the claim was not made within the 2017–2018 Policy period (which began on June 28, 2017). (*Id*. at #13–14). In Count II, Allied World alleged that the 2017–2018 Policy could not provide coverage because Endorsement 7 excluded coverage for claims of which the insured had knowledge prior to the policy period and Goettle was aware of the claim related to the Dolet Hills incident (as of the June 1, 2017, email) *before* the 2017–2018 Policy period. (*Id*. at #14–15). In Count III, Allied World alleged that Goettle could not seek coverage under the 2017–2018 Policy because it had not updated its March 2017 renewal application to disclose its awareness of the Dolet Hills incident, which Allied World maintained would have impacted its decision to renew the policy. (*Id*. at #15–16). And in Count IV, Allied World alleged that Goettle could not make a claim under the 2016–17 Policy because it did not report the Dolet Hills incident to Allied World within 60 days of the end of the covered policy period as the policy's reporting requirements mandated.[6] (*Id*. at #17). And Allied World sought a declaration from the Court affirming the validity of each of its four theories of non-coverage. (*Id*. at #18). Goettle counterclaimed for breach of contract and for a declaratory judgment, both seeking a ruling that Allied World has a duty to defend and to indemnify Goettle in connection with the Louisiana suit under the 2017–18 Policy. (Doc. 7, #209–10).

Following discovery, the parties both moved for summary judgment regarding Allied World's duties to defend and to indemnify. (Docs. 61, 62). The then-assigned

---

[6] Goettle made expressly clear in its summary judgment briefing that it sought coverage for the Dolet Hills incident under only the 2017–2018 Policy. (Doc. 61, #4066 n.1; *see* Doc. 74, #4779). As a result, Count IV of Allied World's Complaint is moot.

judge ultimately ruled in Goettle's favor with respect to Allied World's duty to defend it in the Louisiana action. (Doc. 74, #4789). In that ruling, the judge resolved several issues. First, she held that the Dolet Hills incident involved a non-pollution event, such that Goettle had to comply with only the original policy language (not Endorsement 7). (*Id.* at #4784–85).[7] Second, she found that there was a genuine dispute of material fact as to whether an email JGC sent on June 1, 2017, first identifying "errors and omissions" in the construction of the retaining wall constituted notice of a potential claim for which Goettle needed to alert Allied World (which timing would affect whether the claim fell within the 2016–2017 Policy or the 2017–2018 Policy). (*Id.* at #4782 n.5). Third, she concluded that Goettle's failure to update its renewal application (completed before the Dolet Hills incident) to include details of the ongoing issues related to the retaining wall did not bar it from seeking coverage under the 2017–2018 Policy. (*Id.* at #4785–86).[8] And finally, she held that the August 10, 2017, demand letter from JGC "constituted at least the assertion of a potentially covered Claim," which thereby triggered Allied World's duty to provide Goettle a defense in the Louisiana action. (*Id.* at #4787–88).

Altogether, the summary judgment ruling effectively denied Allied World all the relief it requested in its Complaint. *See supra* notes 6–8. But that did not mean

---

[7] This holding effectively bars Allied World's obtaining relief on Counts I and II of its Complaint, as both counts turned on the application of Endorsement 7 to the Dolet Hills retaining wall incident to support Allied World's denial of coverage. (Doc. 74, #4784–85 (explaining that the arguments that serve as the basis for Counts I and II of the Complaint, (Doc. 1, #13–15), "fail as a matter of law because Endorsement No. 7 is not applicable")).

[8] This holding implicitly bars Allied World from obtaining relief on Count III of the Complaint. (*See* Doc. 1, #15–16).

the prior assigned judge granted Goettle's counterclaim. Yes, the Court held that Allied World owed Goettle a duty to defend—half the relief Goettle requested in its counterclaim. But importantly (for present purposes), the judge declined to reach the question of indemnity. Specifically, she noted that "an insurer's duty to indemnify is distinct from its duty to defend" and that "the Court could not determine … whether Allied World has an ultimate duty to indemnify … as it depends on the disposition of the underlying litigation." (*Id.* at 4788 (cleaned up)). So the judge ordered Allied World to pay the defense costs, held the indemnification issue in abeyance, and stayed the case pending resolution of the Louisiana suit. (*Id.* at #4789; Doc. 91).[9] Thereafter, with the stay still in place, the matter was reassigned to the undersigned. (Doc. 99).

Then in January 2024, JGC and Goettle (without input from Allied World) purportedly settled their dispute for $3.9 million.[10] (Doc. 105, #5397). Though Allied World had been a party to the Louisiana lawsuit, JGC and Goettle notified it of the

---

[9] While the underlying litigation was ongoing, Goettle moved to enforce the prior judge's summary judgment order contending that Allied World had refused to pay certain defense costs. (Doc. 79). Though finding that Allied World had acted reasonably in raising doubts about the propriety of paying for the fees to which it objected, the then-assigned judge ultimately concluded that Goettle properly requested reimbursement for those fees, granted its motion to enforce, and ordered Allied World to pay $226,051.51. (Doc. 91, #5292). Allied World appealed this order, which was essentially an injunctive order to pay money, (Doc. 92), but lost on appeal, (Doc. 97). The Sixth Circuit, in ruling that Allied World owed Goettle the $226,051.51, also analyzed and affirmed the prior-judge's summary judgment rulings upon which the order to pay was based. (*Id.* at #5377–79). In other words, the Sixth Circuit also held that Allied World could not obtain the relief it requested in its declaratory judgment action. The Court suspects that this affirmance prompted Allied World now to acknowledge that the underlying Louisiana suit did incorporate *some* covered claims. (Doc. 108, #5565).

[10] Goettle also notes that the settlement agreement is "unexecuted," (Doc. 105, #5397; *see* Doc. 104, #5392 (referring to the agreement as in "draft" form))—a detail confirmed by review of the unsigned document provided to the Court for *in camera* review in resolving Goettle's unopposed motion to file the draft under seal, (Doc. 110); *see infra* note 11. The Court is unclear what authority would permit it to enforce an agreement lacking even the basic requirements necessary to consummate a contract under elementary contract principles.

settlement agreement on January 22, 2024, only after they had negotiated the compromise. *See* Motion to Stay at 3, *Joy Glob. Conveyors Inc.*, No. 5:17-cv-1121 (W.D. La. Jan. 22, 2024), ECF No. 132. And they made clear their intention to have Allied World shoulder the entire settlement obligation (even if some of the claims would not be covered by the policies it had issued). *Id.* at 3–4. As requested, the parties notified this Court in March 2024, that JGC and Goettle had settled the underlying Louisiana action. (3/19/24 Min. Entry). At a telephone status conference held on March 19, 2024, the parties and the Court discussed the proper path forward. (*Id.*). Given Goettle's insistence that it could compel Allied World to pay the settlement amount (to which Allied World did not agree), the Court ordered the parties to brief the questions whether the settlement amount should be allocated between covered and uncovered claims (as Allied World maintains) and, if so, whether Allied World is barred from challenging any allocation decision that Goettle and JGC made and incorporated in the settlement agreement. (*Id.*).

Thereafter, Goettle moved "to enforce" the prior judge's summary judgment order by having the Court enter an order compelling Allied World pay the entire settlement agreement amount. (Doc. 105). Allied World opposed noting that no indemnification decision had ever been made and that Ohio law does not require insurers that fail to comply with their duty to defend to pay for claim not covered by the policy. (Doc. 108). Goettle replied. (Doc. 109). The matter is now ripe.[11]

---

[11] Goettle also moved for leave to file under seal the draft settlement agreement pursuant to *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 306 (6th Cir. 2016), and its progeny. (Doc. 110). Goettle contends that sealing is justified because the settlement

## LAW AND ANALYSIS

Goettle's motion boils down to two assertions: (1) that the then-assigned judge already concluded that Allied World must pay for the entirety of any settlement reached; and (2) that Ohio law bars Allied World from objecting to any obligation to pay for uncovered claims because it wrongfully refused to defend. (Doc. 105, #5396–98). These assertions do not withstand scrutiny under either the prior judge's Order or Ohio caselaw. Take each in turn.

### A.     Indemnification Has Not Already Been Resolved

On Goettle's telling, the prior judge concluded that Allied World must pay for any settlement of the Louisiana action—whether Goettle settled covered or uncovered

---

agreement is not a "judicial document" requiring public access and the parties' interests in confidentiality outweigh the public interest in access to that document. (*Id.* at #5586–87). The Court concludes that Goettle has failed to meet its strong burden to overcome the right to public access. *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983). For starters, Goettle has offered this unexecuted settlement agreement for the Court's review to assist in the Court's adjudication of its motion to enforce. (Doc. 110, #5584). That renders it a judicial document to which the right to public access attaches, as it serves as part of the record upon which the Court is ruling. *Hearn v. Dick's Sporting Goods, Inc.*, No. 1:22-cv-329, 2023 WL 7298616, at *6 (S.D. Ohio Nov. 6, 2023); *cf. Hens v. Clientlogic Operating Corp.*, No. 05-cv-381S, 2010 WL 4340919, at *2 (W.D.N.Y. Nov. 2, 2010) (explaining that settlement agreements are not judicial documents *in the context* of Rule 41 dismissals, where the agreement is not docketed in order to close the case). So Goettle's attempt to disclaim the agreement as not a judicial document fails. *Shane Grp.*, 825 F.3d at 305 (explaining that the right attaches "when the parties place material in the court record"). And Goettle's only other basis for sealing is the parties' agreement to keep the document confidential. But parties may not stipulate away the public's right to access. *Hearn*, 2023 WL 7298616, at *6 (citing *Shane Grp.*, 825 F.3d at 306); *In re Smithland Towing & Constr., LLC*, No. 5:18-cv-113, 2024 WL 504030, at *2 (W.D. Ky. Jan. 8, 2024) ("An agreement between the parties, or an agreement between one party and other parties, to maintain confidentiality cannot on its own overcome the public's strong interest in obtaining the information contained in the court record." (cleaned up)). And the Court has reviewed the agreement and sees nothing in it that fits the bill of grounds justifying sealing, such as confidential communications, privileged materials, trade secrets, or the like. *Hearn*, 2023 WL 7298616, at *6. So the agreement must be filed on the public docket. The Court accordingly **DENIES** Defendant/Counterclaimant Richard Goettle, Inc.'s Renewed Motion for Leave of Court to File Document Under Seal (Doc. 110).

claims and whether Allied World consented to the agreement or not. But that description of the prior judge's ruling is simply wrong. The then-assigned judge expressly stated that "the Court cannot determine at this time whether Allied World has an ultimate duty to indemnify." (Doc. 74, #4788). If this Court never previously determined whether Allied World had a duty to indemnify, it necessarily has made *no finding* that Allied World must "reimburse [Goettle] for a loss suffered because of [the settlement of the Louisiana suit]." *Indemnify*, Black's Law Dictionary (12th ed. 2024). And Goettle cannot concoct an implicit ruling to that effect merely because the summary judgment ruling included case citations that set forth general principles of Ohio insurance law. (Doc. 105, #5395–97, 5409; Doc. 109, #5578–80). The previous opinion could not have been more clear that it was *not* deciding "whether Allied World has an ultimate duty to indemnify." (Doc. 74, #4788; *see* Doc. 78, #4877). In other words, the May 28, 2019, Order does not hold that Allied World must pay for a settlement to which it never consented. Thus, there is nothing for Goettle to "enforce" in that regard.

Possibly (although the motion and reply do not truly present this argument), Goettle is inartfully arguing that (1) the prior assigned judge's legal holdings in connection with resolving the duty-to-defend question also foreclosed all four grounds Allied World raised in its Complaint as a basis for denying indemnification, *see supra* notes 6–8, and (2) Allied World cannot now raise *other* grounds for denying indemnification, such that (3) the prior opinion implicitly ruled that Allied World must provide coverage. If *that* is the argument (again, the Court is skeptical in light

of the briefing), Goettle would have slightly more support for its claim that its motion now merely seeks to "enforce" the prior judge's ruling in its favor. But any such argument nonetheless cannot be squared with either the prior judge's ruling or the procedural posture of this case. First and foremost, that Allied World's previously proffered grounds for seeking a declaratory judgment fail does not necessarily mean that it has a duty to indemnify no matter what. To the contrary, there may be other bases for a lack of coverage besides those first-order arguments Allied World had raised (for example, it may now argue that the coverage provisions do not apply to the underlying suit in the first instance). (*See* Doc. 47-19, #2942–54 (Allied World's raising several additional defenses to coverage in its denial letter); Doc. 61, #4102–03 (Goettle's acknowledging that Allied World had asserted other defenses in its denial letter)). And Goettle points to no case law holding that an insurer must present every possible ground for non-coverage if it brings a declaratory judgment action to that effect, on pain of otherwise losing the right to rely on that ground to defeat the insured's demand for coverage in the same action.[12] Or stated differently, Goettle still retains its burden of proof on its counterclaim, which requests a judgment compelling Allied World to indemnify it for the costs associated with the underlying Louisiana

---

[12] The issue, of course, would be in a different posture vis-à-vis what coverage defenses Allied World could raise were indemnity litigated after judgment had been rendered in the insurer's *separate* declaratory judgment action—res judicata would apply to *that* case. But seeing as no judgment has been rendered in this single action, the prior judge rightly rejected Goettle's attempt to rely on res judicata to bar Allied World from raising defenses to indemnity other than those for which it sought a declaratory judgment, (Doc. 61, #4102–03; *see* Doc. 75, #4797–801 & Doc. 77, #4845–46 (reraising the failed arguments that res judicata applies in this single action)), as lacking in merit. (Doc. 74, #4789 n.7). And as to Goettle's attempts to achieve the same result via the doctrines of waiver and estoppel, (Doc. 75, #4792–93; Doc. 77, #4845–49), those arguments do not fare much better, as explained below, *see infra* note 14.

suit. *Ramsey v. Allstate Ins. Co.*, 416 F. App'x 516, 520 (6th Cir. 2011). And it cannot satisfy that burden simply by noting that Allied World's attempt to seek a declaratory judgment—focused only on certain coverage defenses—failed as a matter of law.

This point is underscored by the prior judge's emphatic holding (in response to Goettle's motion to clarify, (Doc. 75), that attempted to bar Allied World from defending against the counterclaim using defenses not identified in its Complaint) that "it could not resolve whether Allied World will have [a] duty to indemnify Goettle" and that "it would be speculative and premature to decide" whether Allied World could raise those additional defenses in response to Goettle's counterclaim. (Doc. 78, #4875, 4877). Simply, the prior assigned judge made clear—more than once—that she made no determination as to indemnification. As a result, Goettle cannot be heard to "enforce" any such non-existent determination now.

## B. *Sanderson v. Ohio Edison Co.* and Allocation

Goettle's second argument seeks to sidestep this issue by contending that, under Ohio law, Allied World's alleged wrongful refusal to defend Goettle in the Louisiana litigation means that Allied World cannot object to paying for both the covered *and uncovered* claims that Goettle settled in the underlying suit. (Doc. 105, #5406; Doc. 109, #5579–80). Allied World disagrees with both the underlying assumption and the proposed result. It states that (1) it never wrongfully refused to defend, and (2) the caselaw on which Goettle relies does not stand for the broad proposition that Goettle asserts. (Doc. 108, #5560–62). The Court concludes, however,

that it need not address whether Allied World wrongfully refused to defend,[13] as, even assuming it did so, Goettle's preferred outcome does not attain.

For starters, as the prior assigned judge explained (twice over), in Ohio, "[a]n insurer's duty to indemnify is distinct from its duty to defend," *and* "estoppel cannot be invoked *to create coverage under an insurance policy* where coverage otherwise does not exist." (Doc. 74, #4788–89 (emphasis added) (cleaned up); Doc. 78, #4877). Both rules reveal that the *scope* of Allied World's coverage liability remains an open, contestable question. *See supra* Part A. Namely, an insurer's actions with respect to its duty to defend do not on their own implicate its *independent* obligation to indemnify an insured. Rather, the scope of the duty to indemnify is dictated by the policy language, and as noted immediately above, an insured cannot use estoppel to expand the scope of a policy's stated coverage. *Hybud Equip. Corp. v. Sphere Drake Ins.*, 597 N.E.2d 1096, 1103–04 (Ohio 1992). As applied here, those principles suggest that Goettle cannot foist liability for uncovered claims on Allied World (i.e., expand coverage) by claiming (1) the latter flouted its duty to defend Goettle in the underlying Louisiana suit, and (2) that this failure bars (i.e., estops) Allied World from challenging its coverage obligations now.[14]

---

[13] The Court does note, however, that under Ohio law, an insurer's bringing a declaratory judgment action to define its defense obligations generally does not constitute a wrongful refusal to defend. *Allstate Ins. Co. v. Vasquez*, 599 N.E.2d 756, 758 (1991). And furthermore, the prior assigned judge did note that although she needed to order Allied World to pay certain defense costs to which it objected, "it was reasonable under the procedural circumstances [] for Allied World to question whether the fees sought were incurred by Goettle in its defense against [JGC's] claims." (Doc. 91, #5292).

[14] The Court acknowledges that there are exceptions to this rule. *See Turner Liquidating Co. v. St. Paul Surplus Lines Ins.*, 638 N.E.2d 174, 179 (Ohio Ct. App. 1994). But to invoke them,

What of Goettle's suggestion that caselaw supports its position? Goettle points to *Sanderson v. Ohio Edison Co.*, 635 N.E.2d 19 (Ohio 1994), as holding that insureds may compel insurers to pay for an entire settlement (encompassing covered and uncovered claims) when the insurer wrongfully refuses to defend the insured. (Doc. 105, #5402–04). That characterization overstates *Sanderson*. In fact, a close reading

---

Goettle would need to proffer evidence either that Allied World led it to believe Allied World would not contest the scope of its coverage liability (a detrimental reliance theory) or that Allied World acted inconsistently with its right to raise such a challenge, thereby impliedly waiving its ability to do so. *Id.* This is a tall ask. *Andreae v. Cap. One*, No. 1:22-cv-618, 2024 WL 1579914, at *6 (S.D. Ohio Apr. 11, 2024) (explaining that waiver through inconsistent acts must be shown via evidence "*clearly* and *unmistakably*" revealing the rightsholder's voluntary relinquishment of a known right); *accord Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 471–79 (9th Cir. 2023) (detailing all the record evidence before determining that the defendant clearly and unmistakably impliedly waived its arbitration right). And it is one Goettle will be unable to meet, especially because any failure by Allied World to assert certain defenses combined with the mere passage of time does not amount to a waiver—only, at best, a forfeiture, *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024). Besides, Allied World forecasted from the start that it does not believe it owes Goettle any money under the policy, as it brought this suit to lend judicial credence to its denial letter. (Doc. 1; Doc. 47-19, #2942–54). So Goettle cannot reasonably claim that it believed Allied World would not challenge the scope of its indemnification obligations once the Louisiana suit ran its course. The coverage liability contest is still fair game.

To be sure, Goettle could be arguing that Allied World's wrongful denial of its duty to defend "waived" its right to challenge its duty to indemnify. The Court addresses that next in its analysis of *Sanderson v. Ohio Edison Co.* 635 N.E.2d 19 (Ohio 1994). As explained in more detail, while Ohio law would permit Goettle to hold Allied World to the settlement (and its admissions in such an agreement)—assuming Allied World wrongfully refused to defend—Goettle still cannot expand the scope of its coverage due to it under its policy. In other words, the wrongful refusal to defend does bar Allied World from arguing that the insured should have avoided (or decreased the costs of) liability for covered claims in the underlying suit. That is because the refusal to defend constitutes actions inconsistent with directing how the insured should have handled the underlying suit. But not being able to object to the costs of an underlying liability to the extent that it is properly covered by the policy does not mean the policy's coverage obligations can be expanded to sweep in what otherwise are non-covered claims. Simply, courts may require insurers to bear the costs of wrongfully refusing to defend but may not use that wrongful refusal to rewrite the insurance contract.

For these reasons, Goettle cannot seek refuge under either the detrimental reliance or waiver exceptions to the rule that an insured cannot utilize (via estoppel) Allied World's litigation behavior to expand the scope of its coverage liability under a policy.

of that case suggests it stands for the *opposite* of what Goettle intimates. All agree *Sanderson* holds that an insured need not obtain the insurer's consent to settle when the latter wrongfully refused to defend the lawsuit. (Doc. 105, #5402–03; Doc. 108, #5559). The *Sanderson* court explained that, in such a context, "the insurer voluntarily foregoes the right to control the litigation." 635 N.E.2d at 23. So the insurer cannot complain that it did not agree to settle the underlying matter (even if such consent is a condition precedent to indemnification under the policy) because "[n]either the insured nor the injured party is required to perform conditions in a policy made vain and useless by reason of the insurer's prior breach." *Id.* at 23–24. And it necessarily follows that, if the insurer cannot object to the way the insured handled the underlying litigation, the insurer also cannot object the costs of the litigation to the extent the policy provides coverage. *Id.* at 24. Simply put, an insurer that refused to defend may not profit from its breach of the contract and decrease its liability under contract by suggesting that had the insured done a better job of defending the underlying claim the resulting liability would have been smaller or non-existent. For this reason, an insured's admissions in the underlying litigation (including concessions of liability) will be held against an insurer that wrongfully refused to defend. *Id.* at 23–24.

But forfeiting the right to control the underlying litigation and the resulting value of the settlement is not the logical equivalent of admitting one's indemnity obligations under the policy. *Suffolk Tankers, Ltd. v. Evanston Ins. Co.*, No. 1:00-cv-3062, 2005 WL 2401897, at *1 & n.12 (N.D. Ohio Sept. 28, 2005) ("Ohio law is

17

clear[:] … an insurer's rejection of a demand for defense will permit an insured to proceed to settle a claim on its own and, *if coverage is established*, to bind the insurer to that result." (emphasis added)). As a result, the two cannot be conflated as Goettle does in its briefing. (*See* Doc. 109, #5578 (stating correctly that an insured may settle without consent of the insurer who wrongfully refused to defend but then concluding, without explanation, that rule statement requires finding that "the insurer must indemnify the insured for the full amount of the settlement")).

*Sanderson* itself lays that distinction bare. After concluding the insurer was estopped from using its lack of consent to avoid liability for the settlement (and noting the settlement was not otherwise proven to be fraudulent or collusive), the *Sanderson* court expressly addressed the merits of the insurer's arguments that the policy (either by its coverage or exclusion provisions) did not cover the settlement. 635 N.E.2d at 24–26, 24 n.1. Namely, the court considered whether the underlying accident had not "arise[n] out of the [insured's] use of the particular insured vehicle and therefore [wa]s not covered by the insurance policy." *Id.* at 24–25. After finding that that coverage provisions applied, the *Sanderson* court then turned to the insurer's other argument that coverage did not extend to the accident because the vehicle (which had not been owned by the insured) "was not furnished for [his] regular use," which was required for coverage to extend to an accident involving an automobile the insured did not own. *Id.* at 25–26. If Goettle were right that an insurer's refusal to defend conclusively determined the insurer's obligation to pay for any settlement the insured struck (even absent fraud or collusion), why would the *Sanderson* court reach the

18

*merits* of the insurer's argument that the accident was not covered? It would make little sense to assess the scope of the insurer's indemnity obligation if coverage liability were "conclusively" established by its refusal to defend. Goettle never addresses this portion of *Sanderson*—what would be a glaring inconsistency under Goettle's (misreading) of its holding. Nor can it. *Sanderson* simply does not support its position.[15] *See Buckeye Ranch, Inc. v. Northfield Ins. Co.*, 839 N.E.2d 94, 111–12 (Franklin Cnty. Ct. Com. Pl. 2005) (recognizing under *Sanderson* that the insurer could not object to the reasonableness or the cost of settlement but explaining that "[t]here remain open questions as to whether the settle[d]" claims were covered by the policy); *accord Suffolk Tankers, Ltd.*, 2005 WL 2401897, at *1 & n.12 (reading *Sanderson* merely to bar insurers from contesting the decision to settle but stating that the settlement may not be held against the insurer unless and until the insured establishes coverage).

Put simply, *Sanderson* established a modest rule: an insurer cannot defeat an insured's claim under the policy on the grounds that the insured struck a settlement with the third-party claimant without the insurer's consent or that the settlement value was too costly or unreasonable. The insurer's refusal to defend estops it from asserting those specific defenses which are inconsistent with its declining to take

---

[15] In fact, Goettle appears to acknowledge that *Sanderson* did not reach as far as it otherwise contends. Goettle states that *Sanderson* held that "when an insurer unjustifiably breaches the duty to defend, … such insured is at liberty to make a reasonable settlement without prejudice to the insured's right *under the insurance agreement*." (Doc. 105, #5402–03) (emphasis added)). Correct. Goettle may still recover *under the insurance agreement* even though it did not obtain Allied World's consent to settle Louisiana suit. But if the insurance agreement still applies, it necessarily follows that Goettle has no right to recover for claims the insurance agreement does not cover.

control over the underlying litigation. But *Sanderson* still adhered to the baseline requirement that an insured demonstrate coverage under the policy. Or, stated differently, it did not alter the rule that an insured may not expand coverage via estoppel. *Hybud Equip. Corp.*, 597 N.E.2d at 1103–04; *see Owens Corning v. Nat'l Union Fire Ins. of Pittsburgh, PA*, 257 F.3d 484, 493 (6th Cir. 2001) (explaining that under Ohio law, an insurer may be liable for "coverage of [a] settlement except to the extent that the uninsured claims *have actually increased* the insurer's liability" (emphasis added)). Accordingly, Goettle has no leg to stand on in seeking to have the Court leave the full bill with Allied World based solely on the claim that Allied World wrongfully refused to defend it (assuming such wrongful refusal occurred).[16] Ohio law does not permit such an outcome—coverage under the policy is still a prerequisite to recovery even for settlements executed by an insured handling his own defense in the underlying litigation.

For that reason, it is no surprise that Ohio law permits allocation (i.e., the apportioning of the costs of an insured's obligation to a third-party claimant between those claims covered by the policy and those that are not) before compelling an insurer to pay for a settlement. *Buckeye Ranch, Inc.*, 839 N.E.2d at 111–12 (concluding, after finding the insurer "forfeited the right to control the [insured's]

---

[16] Admittedly, Goettle does cite a single case that adopts the position it now pushes. (Doc. 105, #5405 (citing *Stoller v. Fid. & Guar. Ins. Underwriters, Inc.*, No. WD-87-64, 1988 WL 81809, at *6 (Ohio Ct. App. Aug. 5, 1988)). But *Stoller* cannot carry the day. The appeals court's holding there predates and, most importantly, conflicts with the Ohio Supreme Court's decision in *Sanderson*. And, in any event, it is unpublished and therefore has no precedential value under Ohio law. *Watson v. Neff*, 2009-Ohio-2062, ¶ 16 & n.2 (4th Dist.) (explaining that under the former Ohio Sup. Ct. R. Rep. Op. 2(G), unpublished decisions prior to May 1, 2002, are not controlling authority in Ohio).

defense," that "[t]here remain open questions … whether the settlement … related predominantly to [non-covered claims] … or instead … decisions … of a professional nature [such that they were covered by the professional liability policy] and, if so whether [an] exclusion provision … operate[d] to deny reimbursement for *some or all* of the settlement" (emphasis added)); *accord Clifford v. Church Mut. Ins.*, 655 F. App'x 293, 300 (6th Cir. 2016) (citing *World Harvest Church v. Grange Mut. Cas. Co.*, 2013-Ohio-5707, ¶ 29 (10th Dist.), *rev'd on other grounds*, 68 N.E.3d 738 (Ohio 2016)), for the proposition that under Ohio law "allocation [applies] … when there are both 'covered and non-covered claims'"); *Owens Corning*, 257 F.3d at 493 (concluding that Ohio insurance law would permit allocation of settlement costs between insured and uninsured claims).[17] The parties may therefore proceed to litigate over how to

---

[17] Goettle objects that *Clifford*, *World Harvest*, and *Owens Corning* do not establish a rule that allocation is permitted under Ohio law. It contends that *Clifford* and *World Harvest* are inapt because both involved general jury verdicts and neither implicated an insurer that failed to defend the insured. (Doc. 109, #5571–73). But as explained, Ohio law does not compel an insurer that refused to defend to pay for uncovered claims. And that *Clifford* and *World Harvest* allow allocation of general verdicts regarding both covered and uncovered claims reveals that Ohio law uses allocation as the means to implement the rule that estoppel does not expand the scope of an insurer's liability under the policy. So Goettle's objections to those cases lack merit. Goettle also contends that *Owens Corning* cannot support allocation because the case applied Delaware law and upheld a decision not to allocate settlement costs. (Doc. 109, #5573–74). First, *Owens Corning* expressly applied Ohio insurance law to whether allocation of settlement costs was permissible—it applied Delaware law only to whether the corporation properly indemnified its directors. 257 F.3d at 488 ("Ohio law governs the [insurance] contract, although we look to the corporate law of Delaware for the standards governing [corporate] indemnification."). And while the *Owens Corning* court found allocation unwarranted, it reached that conclusion *after* agreeing with the district court that the summary judgment record contained no evidence that any portion of the settlement costs stemmed from the uncovered claims. *Id.* at 493 & n.4. In other words, *Owens Corning* supports the principle that allocation of settlements between covered and uncovered claims is proper under Ohio insurance law and that the insured must show (using evidence in the summary judgment record) "there is no genuine issue of material fact concerning whether allocation is warranted." *Id.* at 493. So Goettle's objections to *Owens Corning* are baseless.

apportion the costs of the settlement between covered and uncovered claims (as Allied World now maintains, (Doc. 108, #5565); *see supra* note 9), which will thereby establish how much Allied World must pay for the settlement.

To be certain, no such ruling on allocation is proper at this moment. The movant, Goettle, has made no effort to present evidence in its motion. And that means it has not met its burden of proving the absence of a genuine issue of material fact as to what settled claims are covered and how much of the settlement value can be attributed to those covered claims (if less-than-all of the settlement is covered by the policy). *Owens Corning*, 257 F.3d at 493. This evidentiary gap in the record poses an obstacle to Goettle's meriting the relief it requests.

## CONCLUSION

In short, Allied World will be obligated to pay some amount of the settlement, as it readily admits. (Doc. 108, #5565). But it still may challenge whether it is obligated to pay the full amount, or whether a portion of that amount should be allocated to uncovered claims. As Goettle has provided no evidentiary basis either to ascertain what claims are covered or to allocate the settlement value accordingly, the Court cannot entertain its request for relief at this time. For this reason and those explored above, the Court **DENIES** Defendant/Counterclaimant Richard Goettle, Inc.'s Motion to Enforce Court's March 28, 2019, Order and Order for Payment of Settlement Funds (Doc. 105).

In addition, as explained above, *see supra* note 11, the Court finds that the settlement agreement does not merit sealing under the standards outlined in *Shane*

*Group*. So the Court **DENIES** Defendant/Counterclaimant Richard Goettle, Inc.'s Renewed Motion for Leave of Court to File Document Under Seal (Doc. 110). Accordingly, Goettle shall file the settlement agreement on the public docket.

     **SO ORDERED.**

August 19, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**